Judge Mary Jo Heston
Chapter 13
Location: Tacoma
Hearing Date: February 3, 2020
Hearing Time: 1:00 p.m.
Response Due: January 27, 2020

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

IN RE:

SARAH HOOVER,

    Debtor.

BK Case No. 19-42890-MJH

Chapter: 13

RESPONSE TO MOTION TO
ANNUL THE AUTOMATIC STAY

## I.     INTRODUCTION

    This is a small offshoot proceeding brought within the greater context of an egregious textbook case of a stay violation. The debtor, Sarah Hoover, provided actual notice of her bankruptcy proceeding to the lender, mortgage servicer, and trustee, who went ahead with a (void) foreclosure sale and issuance of a trustee's deed. After the void sale, the lender, mortgage servicer, and trustee did absolutely nothing to inform IH6 Property Washington, L.P. ("IH6") that its purchase was void. Instead, every entity involved simply buried its head in the sand, hoping that this problem would go away.

    Somewhat surprisingly, IH6, the supposedly-aggrieved purchaser, chooses not to seek recompense from those obviously responsible – the lender, mortgage servicer, and trustee – and instead seeks to punish the debtor, Ms. Hoover, by asking this Court to ratify and legitimize its void purchase. This is not a scenario envisioned by Congress when it drafted the Bankruptcy Code. If IH6 was injured, its financial damages can be easily recovered from those responsible; it

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 1

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH   Doc 24   Filed 01/27/20   Ent. 01/27/20 22:46:51   Pg. 1 of 11

makes far less sense to ratify flagrant disregard of the automatic stay and to force Ms. Hoover and her family out of their home.

Adversary proceeding no. 20-04002 further details the stay violations perpetuated by the relevant actors.

## II. STATEMENT OF FACTS

1. IH6 conveniently omits nearly all pertinent facts to the determination of this motion, and instead seeks to paint Ms. Hoover – who had never previously filed bankruptcy and who did not have the benefit of legal counsel – as their enemy.

2. Facing a nonjudicial foreclosure sale on Friday, September 13, 2019,[1] Hoover filed her *pro se* Chapter 13 voluntary petition for relief under Title 11 of the United States Code (the "Bankruptcy Code") on Monday, September 9, 2019 seeking, among other things, the protection afforded a debtor pursuant to the automatic stay contained in 11 U.S.C. §362. Declaration of Sarah Hoover in Support of Response to Motion to Annul the Automatic Stay (hereafter "Hoover Dec.") at ¶ 38, Ex. I.

3. Ms. Hoover, acting without the benefit of legal counsel, listed PHH Mortgage as a creditor in the bankruptcy case, and PHH received notice of Plaintiff Hoover's bankruptcy filing directly from the court a few days after the filing, *see* Dkt No 10. (Ms. Hoover, having no formal legal training, did not list QLS as a "creditor" at that time because her understanding was that she did not owe any money to QLS. Nevertheless, as discussed below, QLS received actual notice of the bankruptcy filing). PHH also acknowledged receiving actual notice prior to the foreclosure sale by phone with Ms. Hoover. *Ibid.*

4. The present situation began when Ms. Hoover and her husband suffered a downturn in their family business, which became evident by late 2018. In January 2019, Ms. Hoover began contacting the loan servicer for her home, PHH Mortgage Corporation ("PHH" or "PHH Mortgage") who also later identified itself as New Rez, LLC (under its then-identity as

---

[1] Note that RCW 61.24.030 (10) was amended in 2018 to allow the nonjudicial foreclosure procedure for the real property of a deceased borrowers' real property.

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 2

Henry & DeGraaff, P.S.
787 Maynard Ave S.
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH    Doc 24    Filed 01/27/20    Ent. 01/27/20 22:46:51    Pg. 2 of 11

Ocwen Loan Servicing, LLC and/or Ocwen Financial Corporation) in an effort to save her family home, originally purchased by her (now-deceased) father. Ms. Hoover attempted to work with PHH to save her home for months, but PHH was ultimately unwilling to work with Ms. Hoover to bring the loan current or to otherwise offer a loan modification. Hoover Dec at ¶¶ 10-31, Ex. B - F.

5. Ms. Hoover lives at 18205 106th St E, Bonney Lake, WA 98391 ("the Property" or "the Home"), along with her husband and two children. Her adult niece also stays at her home with her three children, ages 11, 10 and 2 years old. The home was purchased by her father, Ali Suleiman, in 2005, with the intention that the Home would eventually pass to Ms. Hoover upon his death. *Id.* at ¶ 2.

6. Ali Suleiman passed away in 2015, and upon his death, Ms. Hoover and her brother Amir Suleiman were named as co-personal representatives of his estate. *See* King County Superior Court case no. 15-4-01840-7 KNT (non-probate estate matter). *Ibid.*

7. Ali Suleiman's will contained a pour-over provision which placed the Home into the Ali Suleiman Trust, of which Ms. Hoover was a co-trustee, and which provided that she would inherit the home. *See Id.* at ¶ 3, Ex. A at 1.1 and 1.2.

8. For financial reasons and legal misunderstandings about the need to transfer title after her father's death, Ms. Hoover did not immediately transfer title of the Home into her name; this is of no legal consequence here. *Id.* at ¶¶ 4-5.

9. When Ms. Hoover fell behind on the mortgage loan, it became difficult to work with the lender/loan servicer, because – while the servicer would not explain this directly – it appeared that she could not formally assume the loan while it was in arrears. *Id.* at ¶¶ 6-10, Ex. B.

10. Ultimately, in May 2019, she received the Notice of Trustee's Sale (dated May 9, 2019) indicating that foreclosure would take place on September 13, 2019. The notice was addressed to Ms. Hoover personally and not to the estate of her father or any other entity. *Id.* at ¶ 13.

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 3

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH    Doc 24    Filed 01/27/20    Ent. 01/27/20 22:46:51    Pg. 3 of 11

11. After months of trying to work with PHH and NewRez to assume the mortgage loan and get them to review a mortgage modification application, in August 2019, Ms. Hoover was told to contact Quality Loan Service ("QLS"), which PHH confusingly referred to as their "attorney," to stop or pause the foreclosure sale. *Id.* at ¶ 26.

12. Ms. Hoover spoke to Robert McDonald, the general counsel for QLS, and after receiving some information about the foreclosure sale, Mr. McDonald told her that she had been misinformed and that only PHH could stop the foreclosure sale. *Ibid.*

13. When time was running out and the foreclosure date fast approaching, Ms. Hoover decided that bankruptcy was her only viable option to save her Home. *Id.* at ¶ 38, Ex. I. On September 9, 2019, the same day as her bankruptcy filing, notice of the bankruptcy filing was faxed to PHH through Elite Legal Network, a company she had hired to assist her with obtaining a loan modification. *Id.* at ¶ 40, Ex. J.

14. On September 12, 2019, the day before the foreclosure sale, Ms. Hoover called PHH twice and confirmed that they received notice of her bankruptcy filing, but Ms. Hoover did not receive any clear information as to whether they had stopped the sale. *Id.* at ¶¶ 41-42, Ex. K.

15. On September 13, 2019 Ms. Hoover learned that PHH had not stopped the foreclosure sale. *Id.* at ¶ 43. Over the next week, communications with PHH, a PHH representative named "Melvin" admitted that the sale was not stopped because he (Melvin) did not have time to review the "over 600 documents and emails" in Ms. Hoover's file to locate the proof of her interest in the property which she had sent to PHH multiple times. *Id.* at ¶¶ 44-45.

16. After PHH did not immediately commit to rescinding the sale, Ms. Hoover instructed Elite Legal Network to contact QLS and IH6 on September 24, 2019 to see if they could assist her in getting the illegitimate sale rescinded. *Id.* at ¶ 46.

17. In the days and weeks that followed, Ms. Hoover did everything in her power to work with QLS, PHH, and IH6 to rescind the sale. *Id.* at ¶¶ 46-57, Ex. L -P. She hired attorneys to assist her with putting all the parties on notice about the violation of the automatic stay and the

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 4

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH    Doc 24    Filed 01/27/20    Ent. 01/27/20 22:46:51    Pg. 4 of 11

void foreclosure sale, while also providing as much information as she could to clarify her ownership of the Home as a beneficiary of the Ali Suleiman Trust. *Id.* at ¶ 58.

18. In late November 2019, Ms. Hoover retained her current counsel. On November 26, 2019, Ms. Henry mailed a letter to QLS, PHH, HSBC Bank, NA (as trustee), and McCarthy & Holthus, making clear to all involved that their sale violated the automatic stay and they had an obligation to undo the sale. *See Henry Dec.* at ¶ 2, Ex. 1.

19. On December 12, 2019, Ms. Henry sent the parties a follow up letter regarding the void foreclosure and included an authorization that listed here full social security number to all parties with attached documentation to clarify Sarah Hoover's interest in the Property. *See Id.* at ¶ 3, Ex. 2.

20. Mr. McDonald from QLS raised some unknown issue regarding Ms. Hoover's social security number in email correspondence regarding the void foreclosure sale, so Ms. Henry personally verified that the social security number Ms. Hoover used to submit loan modification documentation and other correspondence with Ocwen / PHH, the bankruptcy petition filed on September 9, 2019 and the authorization attached to the December 12, 2019 all included the same social security number. *See Id.* at ¶ 4.

21. A third letter with authorization from Sarah Hoover that included a revised authorization letter and additional documentation regarding the Suleiman Trust was sent on September 20, 2019. *See Id.* at ¶ 5, Ex. 3.

22. Lastly, on January 8, 2020 a fourth letter was sent to the parties to again attempt to mitigate the damages and to inform them that Ms. Hoover would file a Complaint of Violation of the Automatic Stay by February 3, 2020 if there was still no resolution of the matter. *See Id.* at ¶ 6, Ex. 4.

23. Through further communications from Robert McDonald at QLS, it became clear that QLS was disclaiming all responsibility for having violated the stay while at the same time not disputing the fact that PHH had actual notice of the Hoover bankruptcy filing multiple times leading up to the trustee's sale. *See Id.* at ¶ 6, Ex. 4.

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 5

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH    Doc 24    Filed 01/27/20    Ent. 01/27/20 22:46:51    Pg. 5 of 11

24. By the end of December, Ms. Hoover finally received correspondence from NewRez / PHH that they were acknowledging her as the Successor-In-Interest to the mortgage loan. Hoover Dec. at ¶ 59, Ex. Q. With that finally accomplished, she sought through her attorneys to give all the parties one last opportunity to rescind the void foreclosure prior to filing a lawsuit for violation of the automatic stay on February 3, 2020. *See* Henry Dec. at ¶ 7, Ex. 5. Unfortunately, IH6 decided to file this motion to annul the stay instead.

### III.  LEGAL ARGUMENT

In deciding whether "cause" exists to annul the stay, a bankruptcy court should examine the circumstances of the specific case and balance the equities of the parties' respective positions. *In re Nat'l Envtl. Waste Corp.*, 129 F.3d 1052, 1055 (9th Cir. 1997); *In re Fjeldsted*, 293 B.R. 12, 24 (9th Cir. BAP 2003). Under this approach, the bankruptcy court considers (1) whether the **creditor** was aware of the bankruptcy petition and automatic stay and (2) whether the debtor engaged in unreasonable or inequitable conduct. *Nat'l Envtl. Waste Corp.*, 129 F.3d at 1055; *In re Cruz*, 516 B.R. 594, 603 (B.A.P. 9th Cir. 2014).

### A.  There are No Grounds for Annulment

Application of the *Fjelsted* factors to the facts in this case support an overall finding against annulment.

#### 1.  Number of filings of the debtor

This factor heavily weighs in favor of the debtor. The Debtor has only filed one bankruptcy case and is not a serial bankruptcy filer.

#### 2.  Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors

This factor also weighs in the Debtors favor since she is not a repeat filer and her intention in filing bankruptcy was to prevent the sale so that she could pay the loan. *See* Hoover Dec. at ¶ 12 – 17, Ex. C.

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 6

Henry & DeGraaff, P.S.
787 Maynard Ave S.
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH    Doc 24    Filed 01/27/20    Ent. 01/27/20 22:46:51    Pg. 6 of 11

### 3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser

This factor weighs in favor of the Debtor. She lives in her familial home with her nuclear family consisting of her husband, three children, and her niece and the niece's two children. *See* Hoover Dec. at ¶ 2. Losing the home would mean that eight people would no longer have any place to live; they would have to go through the emotional trauma of being uprooted from their home and schools and have to find a new place to live on very short notice. Additionally, the home sold at a foreclosure sale and generated $167,407.96 in surplus funds (which QLS has refused to distribute or place into the court registry). It is a matter for judicial notice that a consensual sale would have generated an even better outcome for Ms. Hoover, and also evidenced by the fact that the owner of IH6 offered to sell the home back to Ms. Hoover for $100,000 above what IH6 paid (*See* Hoover Dec. at ¶ at 50-5, Ex. O).

In contrast, IH6 says it is a bona fide purchaser, but they fail to say how they would be harmed if the sale was rescinded. IH6 is a real estate investment company that often buys homes at foreclosure sales. If the sale was rescinded they would simply get their money back; moreover, due to the fact that PHH Mortgage knew about the bankruptcy prior to the foreclosure sale and failed to stop it, and that QLS also knew about the sale on the eleventh day and had the power to rescind and also did nothing, IH6 has the ability to sue those parties to recoup any monetary losses they may have as a result of losing this investment opportunity.

### 4. The Debtor's overall good faith (totality of circumstances test): cf. In re Warren, 89 B.R. 87, 93 (9th Cir. BAP 1988) (chapter 13 good faith)

After doing everything she thought she could to stop the foreclosure sale, it seemed futile to Ms. Hoover to move forward with the bankruptcy when her home was sold unlawfully from under her own feet. Ms. Hoover then she focused her efforts on getting PHH Mortgage to own up to their legal responsibility to rescind the foreclosure sale. Contrary to IH6's baseless attacks and smears, all of Ms. Hoover's actions were obviously done in good faith and she did nothing to conceal her interest. Indeed, the mortgage servicer's files were so full of documentation that they

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 7

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH    Doc 24    Filed 01/27/20    Ent. 01/27/20 22:46:51    Pg. 7 of 11

simply stopped paying attention or caring. Hoover Dec. at ¶ 45. Ms. Hoover retained counsel, who thoroughly informed the parties so that they could affirmatively remedy the stay violation and mitigate their damages. Instead, IH6 chose to short-circuit that process by filing this motion to annul the stay.

### 5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem

The factors here again weigh in favor of the Debtor. Ms. Hoover has diligently done everything within her power to contact PHH in every attempt to stop the foreclosure and when she contacted QLS in August 2019 for assistance, their general counsel, Robert McDonald told her that *only PHH could stop the sale*. Based on that information, she focused all her efforts on engaging with PHH to acknowledge the bankruptcy filing and stop the sale. In any case, it is undisputed that QLS received actual notice on the eleventh day after the bankruptcy filing, and under RCW 61.24.050, they had the ability and obligation under the statute to rescind the sale. The fact that they sent the Trustee's Deed to IH6 a *mere four days after the bankruptcy sale* is a business decision they made to their detriment, and it does not shield them from liability here.

It is evident from the Mr. Stenman's Declaration, (Dkt No. 20 at 3), that PHH had Ms. Hoover's social security number from her repeated efforts to seek a loan modification and assumption of the loan. In spite of Mr. Stenman's insistence that QLS searched for Ms. Hoover's social security number in "Banko" prior to the trustee's sale, the movant has offered no evidence that Ms. Hoover did not use her correct social security number either in the bankruptcy or in her prior communications with PHH. Instead, Stenman and IH6 insinuate that there was no record of a bankruptcy with Ms. Hoover's social security number even though PHH knew her correct social security number. In any case, the comments about Ms. Hoover's social security number are unsubstantiated by the record and could easily be proven by PHH's records.

### 6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules

Ms. Hoover filed a valid and complete short-form bankruptcy petition (*See* Hoover Dec. at ¶ 38, Ex. I). However, PHH's decision to ignore her bankruptcy and proceed with the trustee's

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 8

Henry & DeGraaff, P.S.
787 Maynard Ave S.
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH    Doc 24    Filed 01/27/20    Ent. 01/27/20 22:46:51    Pg. 8 of 11

sale caused her to feel that the bankruptcy was futile, as it had not stopped the foreclosure. Hoover Dec. at ¶ 51. Ms. Hoover then allowed her bankruptcy to dismiss for a failure to follow through with a complete filing not because she was engaging in bad faith, but because the bankruptcy filing had failed her. However, the dismissal of her bankruptcy case does not change the fact that at the time of the foreclosure sale, the Debtor was completely in compliance with this Court in her Chapter 13 case. Neither IH6 nor QLS nor PHH should be able to assert a failure to follow process after the fact to excuse PHH's blatant and continued violation of the automatic stay.

### 7. The relative ease of restoring parties to the status quo ante

Again, this factor weighs in favor of Ms. Hoover. QLS is still holding the surplus funds, and it is a simple administrative matter to undo the sale and refund the purchase money to IH6. It would be much harder (not to mention inequitable and unfair) to uproot a household of 8 people from their family home that was left to Ms. Hoover by her father at his death.

### 8. The costs of annulment to debtors and creditors

The factor here is silent about the costs to a third-party purchaser such as IH6. The factor here is only concerned with the creditor and debtor, and since the creditor holds an enormous amount of the blame for the void foreclosure sale, the equities weigh with the debtor. Costs to the debtor in lost equity, loss of her home and the emotional toll and financial costs of moving a family of eight again weigh in favor of the debtor. IH6 may have been deprived of the use of its money from the time of the sale to the time of rescission, but that is a damage caused by and properly remedied by QLS and PHH.

### 9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct

The Debtor moved as quickly as she reasonably could to file adversary proceeding for violation of the automatic stay. At the time, she was focused on mitigating the damages and verifying that she had supplied the information to all parties that she was indeed the rightful owner of the Property. She immediately and repeatedly informed QLS and PHH that they had

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 9

Henry & DeGraaff, P.S.
787 Maynard Ave S.
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH    Doc 24    Filed 01/27/20    Ent. 01/27/20 22:46:51    Pg. 9 of 11

violated the bankruptcy stay. Her efforts led PHH to finally acknowledge in late December 2019 that she was and is the Successor-In-Interest to this property and the mortgage loan. The Debtor acted in good faith and maintained regular communications with all parties, even informing them that she intended to file a stay violation complaint by February 3, 2020 if the matter was not resolved before then. In contrast, IH6 feigned cooperation and instead decided to file this Motion with the bankruptcy court, short circuiting any efforts at a mutual resolution of the matter.

**10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief**

The creditor here, PHH, has not taken any action to remedy its violation of the stay. QLS, even when informed that the sale had violated the stay, refused to rescind the sale.

**11. Whether annulment of the stay will cause irreparable injury to the debtor**

As argued above, the Debtor would suffer irreparable harm if she is not able to rescind this foreclosure sale. She would lose a large amount of home equity ($100,000, according to IH6; *see* Hoover Dec. at ¶ 52). The Debtor has regular income and the ability to complete a chapter 13 bankruptcy plan. *See* Hoover Dec. at ¶ 36, Ex. H. Additionally, as explained above, now that PHH has finally recognized her as a successor in interest on the mortgage loan, if this foreclosure sale is rescinded, she should be able to apply for a mortgage modification to cure the arrears without the need for a bankruptcy filing.

**12. Whether stay relief will promote judicial economy or other efficiencies**

There is no basis for IH6's speculation that undoing the foreclosure would just result in another foreclosure. Moreover, this ignores the entire purpose of the automatic stay. The Debtor can cure the arrears and as demonstrated by the surplus funds, she has substantial equity in the Home. *See* Hoover Dec. at ¶ 57. This argument has no basis at all.

The factors detailed above weigh in favor of the Debtor, especially when retroactive relief under section 362(d) would mean there would no violation of the automatic stay at all. *See Schwartz v. U.S. (In re Schwartz)*, 954 F.2d 569, 573 (9th Cir. 1992); *see also In re Craighead*,

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 10

Henry & DeGraaff, P.S.
787 Maynard Ave S.
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH    Doc 24    Filed 01/27/20    Ent. 01/27/20 22:46:51    Pg. 10 of 11

No. 09-61169-ASW, 2012 Bankr. LEXIS 2967, at *13 (Bankr. N.D. Cal. June 28, 2012) (explaining that because the court ordered retroactive relief from the automatic stay, the foreclosure sale did not violate the automatic stay and was not void). A motion to annul the stay that simultaneously negates a violation of the automatic stay is a severe remedy and one that is generally appropriate only in situations where the debtor is a serial filer[2] or has little to no equity.[3] This is not the case to find such a severe penalty against the Debtor, especially when she has tried so hard to avoid foreclosure and yet at every juncture her efforts were thwarted.

### IV. CONCLUSION

In consideration of the foregoing the Court should deny the motion to annul and close the bankruptcy case.

Dated this January 27, 2020.

HENRY & DEGRAAFF, P.S.

By: /s/ Christina L Henry
Christina L Henry, WSBA# 31273
Attorney for the Plaintiffs
787 Maynard Ave S
Seattle, WA 98104
Tel# 206-330-0595
chenry@hdm-legal.com

ANDERSON SANTIAGO, PLLC

By: /s/ Jason Anderson
Jason Anderson, WSBA# 38014
Attorney for the Plaintiffs
787 Maynard Ave S
Seattle, WA 98104
Tel# 206-395-2665
jason@alkc.net

---

[2] *See In re Webb,* 294 B.R. 850 (Bankr. E.D. Ark. 2003) (Court found cause to annul the stay to validate a foreclosure sale when the debtor had filed 10 Chapter 13 cases in five years);

[3] *See e.g. In re Siciliano*, 13 F.3d 748, 752 (3d Cir. 1994) (Given these factors, upon Prudential's request for relief under § 362(d), the bankruptcy court must consider whether Siciliano had equity in the property and if not, grant appropriate relief to Prudential); *In re Adams*, 215 B.R.194, 196 (Bankr. W.D. Mo. 1997) (No annulment since Mr. Adams estimated the value of the home to be $64,000 on his bankruptcy schedules. Curry purchased the property at the foreclosure sale for $48,657.67); *In re Lett*, 238 B.R. 167, 192 (Bankr. W.D. Mo. 1999) (No annulment where $43,958.59 in equity).

RESPONSE TO MOTION TO ANNUL THE
AUTOMATIC STAY - 11

**HENRY & DEGRAAFF**, P.S.
787 MAYNARD AVE S.
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

Case 19-42890-MJH    Doc 24    Filed 01/27/20    Ent. 01/27/20 22:46:51    Pg. 11 of 11